729 So.2d 44 (1999)
STATE of Louisiana
v.
Chris BARNES.
No. 98-KA-932.
Court of Appeal of Louisiana, Fifth Circuit.
February 10, 1999.
*45 Bruce G. Whittaker, Louisiana Appellate Project, Gretna, Louisiana, Attorney for Appellant Chris Barnes.
Paul D. Connick, Jr., District Attorney, 24th Judicial District Court, Thomas J. Butler, Terry M. Boudreaux, Assistant District Attorneys, Appellate Counsel, Gregory M. Kennedy, Assistant District Attorney, Trial Counsel, Gretna, Louisiana, Attorneys for Appellee State of Louisiana.
Panel composed of Judges SOL GOTHARD, JAMES L. CANNELLA and THOMAS F. DALEY.
CANNELLA, Judge.
Defendant, Chris Barnes, appeals from his conviction of second degree murder. We affirm.
Defendant was charged with second degree murder on November 30, 1996 of Travis McCall (McCall), a violation of La. R.S. 14:30.1. He pled not guilty on February 18, 1997.
Various motions were filed by defendant on February 26, 1997. At the conclusion of their hearing, the trial court denied the motions. On September 12, 1997, defendant filed a motion to appoint a sanity commission. The motion was granted and a sanity commission was appointed on September 15, 1997. On February 19, 1998, a competency hearing was held. At the conclusion of the hearing, the trial court found defendant competent to stand trial.
Trial began on May 12, 1998, after which, the twelve person jury found the defendant guilty as charged. On May 28, 1998, defendant filed a motion for new trial and a motion for post verdict judgment of acquittal.
On June 5, 1998, the trial court denied defendant's motion for a new trial and motion for post verdict judgment of acquittal. Defendant waived sentencing delays and the trial court sentenced defendant to the mandatory term of life imprisonment at hard labor, without benefit of parole, probation, or suspension of sentence. Defendant was given credit for time served. Defendant made an oral motion for appeal at sentencing and a written motion for appeal was filed on June 10, 1998.
On November 30, 1996, McCall was shot to death while sitting on the back porch of a *46 house located in Westwego, Louisiana. During the investigation of the shooting, defendant voluntarily gave two statements to the police. In the first, he denied being involved. In the second, he admitted to shooting McCall, after McCall pulled a gun and threatened him. He justified his fear of McCall because McCall had recently beaten his brother so severely that he was admitted to a hospital. As a result of the statements, defendant was arrested.
On appeal, defendant contends that there was insufficient evidence to convict him of second degree murder. He also assigns all patent errors.
The standard for appellate review of the sufficiency of evidence is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560, 573 (1979); State v. Ortiz, 96-1609 (La.10/21/97), 701 So.2d 922, 930; State v. Styles, 96-897 (La. App. 5th Cir. 3/25/97), 692 So.2d 1222, 1232, writ denied 97-1069 (La.10/13/97), 703 So.2d 609. Under Jackson, a review of a criminal conviction record for sufficiency of evidence does not require a court to ask whether it believes that the evidence at the trial established guilt beyond a reasonable doubt. A reviewing court is required to consider the whole record and determine whether a rational trier of fact would have found guilt beyond a reasonable doubt.
When circumstantial evidence is used to prove the commission of an offense, La. R.S. 15:438 requires that "assuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence." This is not a separate test to be applied when circumstantial evidence forms the basis of a conviction. All evidence, both direct and circumstantial, must be sufficient to satisfy a rational juror that defendant is guilty beyond a reasonable doubt. State v. Porretto, 468 So.2d 1142, 1146 (La.1985); State v. Ortiz, 701 So.2d at 930.
In order to prove second degree murder, the state must prove (1) the killing of a human being and (2) that defendant had the specific intent to kill or inflict great bodily harm. La. R.S. 14:30.1; State v. Williams, 97-1135 (La.App. 5th Cir. 5/27/98), 714 So.2d 258, 263. In this case, defendant admitted shooting McCall, but claimed self-defense. A homicide is justifiable under La.R.S. 14:20(1), "When committed in self-defense by one who reasonably believes that he is in imminent danger of losing his life or receiving great bodily harm and that the killing is necessary to save himself from that danger."
When a defendant claims self-defense, the state must prove, beyond a reasonable doubt, that the defendant did not act in self-defense. State v. Batiste, 96-1010 (La. App. 5th Cir. 1/27/98), 708 So.2d 764, 771; State v. Rader, 609 So.2d 857, 861 (La.App. 5th Cir.1992); State v. Garcia, 483 So.2d 953, 956 (La.1986). The relevant inquiry on appeal is whether a rational factfinder, after viewing the evidence in the light most favorable to the prosecution, could have found, beyond a reasonable doubt, that the homicide was not committed in self-defense. State v. Batiste, 708 So.2d at 771; State v. Rader, 609 So.2d at 861; State v. Garcia, 483 So.2d at 956. The determination of defendant's culpability focuses on a two-fold inquiry, whether, from the facts presented, defendant could reasonably have believed his life to be in imminent danger, and whether deadly force was necessary to prevent the danger. State v. T.N., 94-669 (La.App. 5th Cir. 1/18/95), 650 So.2d 288, 289-290. While there is no unqualified duty to retreat from an altercation, the possibility of escape is a recognized factor in determining whether or not a defendant had a reasonable belief that deadly force was necessary to avoid the danger. State v. Batiste, 708 So.2d at 771; State v. T.N., 650 So.2d at 289-290.
In this case, defendant did not testify, but his two statements were introduced into evidence. In the first, he denied involvement in the shooting. In the second, he claimed that his brother's beating justified his fear of McCall. The state claims that defendant shot McCall in revenge for beating his brother, who was admitted to the hospital as a result.
*47 At trial, the state presented several witnesses in an attempt to prove that defendant did not act in self-defense. Dr. Fraser MacKenzie testified about the results of the autopsy of McCall. He testified that McCall was shot four times and that three of the wounds indicated a downward trajectory. Concerning the fourth wound, finding an upward trajectory, Dr. MacKenzie testified that this wound is possibly consistent with a victim lying on the ground. Dr. MacKenzie also testified that McCall's urine tested positive for cocaine, opiates and amphetamines. However, he further testified that these substances were not present in McCall's blood, which indicates that he was not under the influence of these drugs at the time of the shooting. Finally, Dr. MacKenzie testified that, with the injuries that McCall sustained as a result of the shooting, he would have initially had the ability to walk around and would have had the ability to fire a gun within the first few minutes after the shooting.
McCall's father testified that he had seen his son a few hours prior to his death. He also testified that McCall had beaten defendant's brother to the point that he was hospitalized.
An hour after it happened, Deputy Christe Norman of the Westwego Police Department was the first officer to arrive at the scene of the shooting. She testified that McCall was lying on the ground, slumped over, and that a pistol was tucked in the front of his pants. By his position, he appeared to have been sitting on a bucket when he was shot. She testified that McCall was "quite a bit bigger" than defendant. She noted that there were three open areas around the site of the shooting where a person could escape the area.
Detective Ralph Sacks of the Jefferson Parish Sheriff's Office and Detective Annette Askew of the Westwego Police Department also investigated the shooting. Detective Sacks stated that he examined the gun found tucked in McCall's pants and determined that the gun was loaded, but had not been fired. He also testified that he had taken two recorded statements from the defendant on December 2, 1996, which were played for the jury during trial. Detective Sacks said that a search warrant was executed on defendant's home in order to look for the clothes that defendant claimed he was wearing at the time of the shooting and that a pair of blue shorts was seized. He further stated that a rock of crack cocaine was found under McCall's body, but there was no evidence that the crack cocaine was a factor in the shooting.
Detective Sacks spoke to defendant's brother in the hospital about his altercation with McCall. Detective Sacks testified that another man, Ronnie Noel (Noel), was initially suspected to be involved in the shooting. Further, the detective testified that none of the witnesses interviewed reported any threats made by McCall against defendant or that defendant shot McCall in self-defense. The gun used to shoot McCall was not recovered.
Detective Askew testified that when she arrived on the scene she instructed the other officers to interview the crowd that had gathered to determine if anyone had information about the shooting. Detective Askew said that she was unable to locate anyone who was aware of threats that McCall made against defendant. Further, Noel was still thought to be involved in the shooting even after defendant gave his statement.
Marcella Smith (Smith) was a witness to the shooting. She testified that she was walking home from a local store at the time and that she could see the back of the house where McCall was shot. As she was walking she saw a man wearing a hood walk up to the side of the house and immediately start shooting in a downward direction. She heard four shots. She could see the shooter, but because of the hood she could not see the shooter's face. Her view of the shooter's victim was obstructed by the wall that runs across the back porch which separates each half of the double house. Once the shooting started, she ran away.
Smith testified that she did not hear any talking or arguing prior to the shooting and that the shooter simply walked up and began firing. She said that she knows McCall's sister, Linda Miller (Miller) because Miller *48 "fixes" her hair. Smith later told Miller that she had witnessed the shooting.
Kevin Walker (Walker) testified that he was at his grandmother's house with his sister and Noel the day before the shooting. While there, defendant arrived with a bag of bullets. Upon defendant's arrival, defendant and Noel went into another room with the bag. Walker admitted that he told an investigator that McCall was already dead when defendant shot him, but Walker claimed that he was just going by hearsay when he made that statement.
At the close of the first day of trial, the state and the defense stipulated that if Tom Angelica were called to testify, he would be qualified as a forensic chemist and would testify that the white substance recovered from beneath McCall's body was crack cocaine. Additionally, the state and the defense stipulated that if Louise Walker were called to testify, she would be qualified as a firearms expert and would testify that all four projectiles recovered in connection with the shooting were consistent with having come from a single .38 caliber handgun.
Deputy Richard Deauzat testified about the taking of pictures at the crime scene and the collection of evidence. He also testified that the night of the shooting was rainy and dark and that the area had poor lighting, but that there was no problem seeing.
The defense called Leonard Chest (Chest) as a witness to the shooting. Chest testified that he lives across the street from where the shooting occurred and that on the night of the shooting he was playing cards at his adjacent neighbor's house. During the card game, a friend came to the door and Chest went outside to speak to him. The friend asked Chest if he had seen McCall and he responded that he had not. Chest went back inside but "something told him to go back outside." When he went back outside, he saw two men arguing and the bigger of the two was holding a gun. Chest then went back inside the house. He heard gunshots a few minutes later. Chest did not get a good enough look from the porch to see who the men were, but he concluded after the shooting that the bigger man holding the gun was McCall and the smaller man was defendant.
The defense called Christina Moten, who arrived on the scene of the shooting soon after it occurred. She testified that she saw a second gun lying near McCall's body that night. She identified the gun as a revolver with a brown handle.
Danielle Barnes, (Barnes), defendant's sister, testified that prior to the shooting she told defendant to stay away from McCall. She stated that McCall had a reputation in the community for robbing and fighting. Barnes testified that she also saw a second gun lying near McCall's body and that it was chrome, with a black handle. Further, Barnes said that approximately thirty minutes before the shooting a person named Jackie saw defendant running down the street.
Terrall Paynes (Paynes) testified that, approximately one week before the shooting, he was present when defendant was told by someone else that McCall was planning to harm him. Paynes claimed that McCall had a neighborhood reputation for violence and the neighbors were afraid of him. However, he also said that McCall may have been afraid of defendant because of what he had done to defendant's brother.
The defense also called Thadeus Sykes who testified that defendant had a violent character.
Thomas Gereighty, a private investigator hired by the defense, testified that the witnesses that he interviewed stated that they had heard specific threats made by McCall against defendant, but could not recall if any of the people interviewed stated that defendant had threatened McCall.
When the trier-of-fact is confronted by conflicting testimony, the determination of that fact rests solely with that judge or jury, who may accept or reject, in whole or in part, the testimony of any witness. State v. Batiste, 708 So.2d at 772; State v. Jiron, 96-319 (La.App. 5th Cir. 10/1/96), 683 So.2d 769, 771;. State ex rel. Graffagnino v. King, 436 So.2d 559, 563 (La.1983). It is not the function of the appellate court to assess the credibility of witnesses or re-weigh the evidence. State v. Batiste, 708 So.2d at 772; State v. *49 Styles, 692 So.2d at 1233; State ex rel. Graffagnino v. King, 436 So.2d at 563.
In this case, there was very little evidence as to what actually happened between McCall and defendant when the shooting occurred. Smith testified that she saw someone shoot, but she did not see the target. Chest testified that he saw two men in the area prior to the shooting, but he could not identify the men. Under our jurisprudence, the state bears the burden of proving that the killing was not done in self-defense. The jury made a credibility determination and apparently believed the testimony of Smith, the only witness to the shooting. Although she did not see the shooter, her testimony indicates that the shooting was not done in self-defense. Thus, viewing the evidence in the light most favorable to the prosecution, we find that a rational trier of fact could have found beyond a reasonable doubt that the homicide was not committed in self-defense, and thus, find that defendant is guilty beyond a reasonable doubt.
We have reviewed the record for patent error and find none. See: La.C.Cr.P. art. 920, State v. Oliveaux, 312 So.2d 337 (La. 1975) and State v. Gaines, 97-672 (La.App. 5th Cir.2/25/98), 707 So.2d 1354, 1359.
Accordingly, we hereby affirm defendant's conviction.
AFFIRMED.