788 So.2d 685 (2001)
STATE of Louisiana
v.
Wendy E. PARENT.
No. 01-KA-50.
Court of Appeal of Louisiana, Fifth Circuit.
May 30, 2001.
*686 Margaret S. Sollars, Louisiana Appellate Project Thibodaux, LA, Attorney for Appellant Wendy E. Parent.
Paul D. Connick, Jr., District Attorney, 24th Judicial District, Parish of Jefferson, *687 State of Louisiana, Thomas J. Butler Counsel of Record on Appeal, Terry M. BoudreauxAppellate Counsel, Allison MonahanTrial Counsel, Assistant District Attorneys, Gretna, LA, Attorneys for Appellee State of Louisiana.
Panel composed of Judges EDWARD A. DUFRESNE, JR., JAMES L. CANNELLA and WALTER J. ROTHSCHILD.
JAMES L. CANNELLA, Judge.
Defendant, Wendy Parent, appeals from her conviction of theft of goods valued between $100 and $500. We affirm the conviction and sentence and remand.
The Defendant was arraigned on June 8, 2000. On July 20, 2000, the Defendant waived her right to a jury trial and was found guilty in a judge trial. Following delays, she was sentenced on September 27, 2000 to imprisonment at hard labor for two years. The sentence was suspended and the Defendant was placed on active probation for three years.[1]
Chandra Ray (Ray), the customer service manager at the Winn-Dixie Supermarket (Winn-Dixie) at 2112 Belle Chasse Highway, Gretna, Louisiana, testified that on April 24, 2000, at approximately 3:00 p.m., she observed the Defendant walk through the entrance door of the store. The Defendant had nothing in her possession at that time. Ray next observed the Defendant going out of the exit door pushing a grocery cart with two large Winn-Dixie water boxes in it. Ray did not see the Defendant go through a checkout line before leaving the store.
As the Defendant exited the door, the alarm went off. Ray asked the Defendant for her receipt and observed liquor, dog items and ham in the boxes. The Defendant didn't have a receipt. The Defendant then pushed the cart out the door and told Ray that she was going to get her checkbook. The Defendant left the cart near a pedestal outside the store and began running. Ray told the other cashiers that she didn't think the Defendant was going to get her checkbook, so the cashiers called for assistance. About five people went outside to apprehend Defendant, who struggled and kicked, refusing to reenter the store. The Defendant was eventually taken back to the store, where she was detained pending the arrival of police.
Lawrence Baudouin, the store manager, corroborated Ray's testimony. He identified State's exhibit one as photographs of the merchandise which the Defendant took from the store and he valued it at $153.57. Baudouin stated that he went outside to assist in apprehending the Defendant. When he arrived, the Defendant was not struggling with the others and returned with him to the store.
Deputy Ray Gorman testified that, on April 24, 2000, he arrested the Defendant for shoplifting and advised her of her rights. He stated that he asked her if she had stolen the goods and she said, "yes." He also said that the Defendant told him that she was "in menopause," and that is what caused her to steal the merchandise.
The Defendant testified that she had suffered for many years with mental problems, *688 depression, anxiety, and panic attacks. She stated that because she is very nervous and sometimes forgets where she is, she does not go "anywhere much" without her daughters. The Defendant said that after she went into the store, she asked "a boy" if she could take some boxes and he said, "yes." The Defendant then put her groceries into the boxes. She stated that all of a sudden she had a panic attack and didn't know her whereabouts. At that point she took her cart and went outside. She said that she told a girl that she would be right back. Because she was disoriented, she walked slowly to her car. Suddenly, a man jumped on her and frightened her. The Defendant told him that she didn't know what was going on, and that she needed her medication. She testified that she was currently taking Prozac, Wellbutrin and Troxidone for depression, anxiety, and menopause. The Defendant said that she was hospitalized a couple of years ago for a week at Ochsner Clinic for mental illness. She also stated that when she was a child, she was admitted to De Paul's Hospital for about one or two months for mental problems. The Defendant testified that it was not her intention to steal the groceries.
On appeal, the Defendant asserts that the evidence was insufficient to support her conviction, because it did not show that she had the specific intent to permanently deprive the merchant of the goods that were taken. The Defendant claims that she left the store with the goods because she experienced a panic attack and needed to leave the store immediately. The Defendant argues that her defense was never disproved and, therefore, not every reasonable hypothesis of innocence was excluded.
The standard for appellate review of the sufficiency of the evidence is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560, 573 (1979); State v. Ortiz, 96-1609 (La.10/21/97), 701 So.2d 922, 930, cert. denied, 524 U.S. 943, 118 S.Ct. 2352, 141 L.Ed.2d 722, (1998); State v. Barnes, 98-932 (La.App. 5th Cir. 2/10/99), 729 So.2d 44, 46, writ denied, 99-1018 (La.9/17/99), 747 So.2d 1099.
Under Jackson, a review of a criminal conviction record for sufficiency of evidence does not require a court to ask whether it believes that the evidence at the trial established guilt beyond a reasonable doubt. Barnes, 729 So.2d at 46. A reviewing court is required to consider the whole record and determine whether a rational trier of fact would have found guilt beyond a reasonable doubt. Id.
In this case, the Defendant was convicted of theft of goods valued at between $100 and $500, a violation of La. R.S. 14:67.10, which provides in part:
A. Theft of goods is the misappropriation or taking of anything of value which is held for sale by a merchant, either without the consent of the merchant to the misappropriation or taking, or by means of fraudulent conduct, practices, or representations. An intent to deprive the merchant permanently of whatever may be the subject of the misappropriation or taking is essential and may be inferred when a person:
(1) Intentionally conceals, on his person or otherwise, goods held for sale....
(3) Transfers goods from one container or package to another or places goods in any container, package or wrapping in a manner to avoid detection.
Thus, in order to convict, the State must prove, beyond a reasonable *689 doubt (1) that the Defendant misappropriated or took, (2) a thing of value, (3) that belonged to another, and (4) that she had the intent to deprive the owner permanently of that which was misappropriated or taken. The State must further prove the value of the stolen property, which determines the severity of the theft and the punishment. State v. Brooks, 00-106 (La.App. 5th Cir. 9/26/00), 769 So.2d 1242, 1245. Specific intent is a state of mind and need not be proven as fact, but may be inferred from the circumstances and actions of the Defendant. State v. Graham, 420 So.2d 1126, 1127 (La.1982).
In this case, the State and the Defendant presented two different versions of the facts. The customer service manager at Winn-Dixie testified that she watched the Defendant leave the store with merchandise concealed in large Winn-Dixie boxes without paying for them. When Ray asked to see a receipt, the Defendant started running toward her car. Defendant was eventually apprehended after a struggle and brought inside the store by the store manager. Deputy Gorman testified that the Defendant admitted stealing the items which totaled $153.57 in value. In her defense, the Defendant stated that she left the store because she had a panic attack and didn't know her whereabouts. The Defendant claimed that it was not her intention to steal the groceries. She testified that she suffered from mental illness, depression and menopause, and took medication for those illnesses. No other evidence was presented relative to the Defendant's alleged mental infirmity.
After hearing the testimony and evaluating the credibility of the witnesses, the trial judge believed the State's witnesses and found the Defendant guilty of theft. When faced with a conflict in testimony, the trier of fact is free to accept or reject, in whole or in part, the testimony of any witness. State v. Ross, 00-27 (La. App. 5th Cir. 5/17/00), 760 So.2d 1256, 1259. In the absence of internal contradiction or irreconcilable conflict with physical evidence, one witness's testimony, if believed by the trier of fact, is sufficient support for a requisite factual finding. State v. Stec, 99-633 (La.App. 5th Cir. 11/30/99), 749 So.2d 784. It is not the function of the appellate court to evaluate the credibility of witnesses, nor to overturn the trial court on its factual determination of guilt. State v. Gentras, 98-1095 (La.App. 5th Cir. 3/30/99), 733 So.2d 113, 118, writ denied, 99-1302 (La.10/15/99), 748 So.2d 464.
After our review of the evidence in this case in the light most favorable to the prosecution, we find that the State proved the Defendant's guilt beyond a reasonable doubt.
We have reviewed the record for errors patent, according to La.C.Cr.P. art. 920, State v. Oliveaux, 312 So.2d 337 (La.1975), and State v. Perrilloux, 99-1314 (La.App. 5th Cir. 5/17/00), 762 So.2d 198, 206, and find two.
First, the transcript indicates that the trial judge did not inform the Defendant of the prescriptive period for post-conviction relief as mandated by La. C.Cr.P. art. 930.8. Although the commitment states otherwise, the transcript controls. State v. Lynch, 441 So.2d 732, 734 (La.1983).
La.C.Cr.P. art 930.8 provides that a court shall not consider an application for post-conviction relief if the application is filed more than two years after the judgment of the conviction and sentence has become final. Therefore, we hereby order the trial court to send written notice to the Defendant advising her of the provisions of La.C.Cr.P. 930.8, within 10 days of the rendering of this opinion and *690 to file written proof in the record that she received said notice. See: State v. George, 99-887 (La.App. 5th Cir. 1/4/00), 751 So.2d 973, 975.
Part of the Defendant's sentence included home incarceration pursuant to La.C.Cr.P. art. 894.2. However, according to the record, the trial judge failed to specify the conditions of home incarceration at the time of sentencing or give the Defendant a certificate setting forth the conditions of her home incarceration. C.Cr.P. art. 894.2, provides in part:
A. Notwithstanding any other provision of law to the contrary, a defendant may be sentenced to home incarceration in lieu of imprisonment under the following conditions....
B. A defendant sentenced to home incarceration shall be supervised and may be subject to any of the conditions of probation.
C. The court shall specify the conditions of home incarceration when it imposes such sentence upon the defendant. The conditions may include any condition reasonably related to implementing or monitoring a sentence of home incarceration, including curfew, electronic or telephone monitoring, home visitation by persons designated by the court, and limitation of the defendant's activities outside of the home.
D. The defendant shall be given a certificate setting forth the conditions of his home incarceration and shall be required to agree in writing to the conditions.
Thus, we remand the matter to the trial court to hold a hearing regarding the conditions of the Defendant's home incarceration. See: State v. Loupe, 00-165 (La. App. 5th Cir. 8/29/00), 767 So.2d 884, 887.
Accordingly, the Defendant's conviction and sentence are hereby affirmed. The case is remanded for the trial court to 1) send written notice advising the Defendant of the provisions of La.C.Cr.P. 930.8 and 2) to comply with the provisions of the La. C.Cr.P. art. 894.2, both within 10 days of the rendering of this opinion and to file written proof in the record that both requirements were accomplished.
CONVICTION AND SENTENCE AFFIRMED; REMANDED FOR COMPLIANCE WITH LA.C.CR.P. ARTICLES 930.8 AND 894.2.
NOTES
[1] In addition to all general conditions of probation, the following special conditions of probation were imposed:

1) home incarceration for six months;
2) payment of a fine and all court costs;
3) performance of 100 hours of community service;
4) no criminal conduct;
5) obtain a GED;
6) write an essay entitled "Why I Should Not Commit A Crime," and read it in open court;
7) attendance at a mental health program.