802 So.2d 937 (2001)
STATE of Louisiana
v.
John SAYLOR.
No. 01-KA-451.
Court of Appeal of Louisiana, Fifth Circuit.
November 27, 2001.
*938 Paul D. Connick, Jr., District Attorney, 24th Judicial District, Terry M. Boudreaux, Alison Wallis, Richard Pickens, Assistant District Attorneys, Gretna, LA, Attorneys for Appellee.
Lane Rutherford Trippe, New Orleans, LA, Attorney for Appellant.
Panel composed of Judges JAMES L. CANNELLA, THOMAS F. DALEY and MARION F. EDWARDS.
MARION F. EDWARDS, Judge.
On June 14, 2000, defendant John Saylor was charged, along with Nyren Ruffin with the armed robbery of a juvenile in violation of LSA-R.S. 14:64. Ruffin pleaded guilty. Following Saylor's plea of not guilty, he was tried and a 12 person jury found him guilty as charged.
*939 On March 2, 2001, Saylor was sentenced to 25 years of imprisonment at hard labor without benefit of parole, probation, or suspension of sentence. On the same date, the State filed a multiple bill alleging Saylor was a second felony offender. Defendant, Saylor, filed a Motion to Quash. A hearing was conducted on that day and the court denied the defendant's motion. The State then presented evidence to support the multiple bill.
On March 16, 2001, the court issued written reasons for denying the Motion to Quash and for finding the defendant to be a second felony offender. LSA-R.S. 15:529.1. The court thereafter vacated the defendant's prior sentence and sentenced him as a second felony offender to serve 49½ years of imprisonment at hard labor without benefit of parole, probation, or suspension of sentence. The defendant presented a Motion for Reconsideration of Sentence, which was denied by the district court. From this verdict defendant appeals.
The record reveals that on June 5, 2000, at approximately 8:00 p.m., juvenile J.B. was walking near his home near the intersection of Kismet and Evie Streets in Gretna. A black Dodge Neon, occupied by two black males, pulled up along side J.B. The passenger in the Dodge jumped out the vehicle, leaving the passenger door of the vehicle open and activating the car's dome light. The black male who exited the vehicle was wearing braids, was about the victim's height, had a heavier build and had on a knit shirt with white, yellow, and blue stripes. He held a handgun, which he placed at the victim's head and demanded money. The victim explained that the only thing he had in his possession was a red key ring, which he surrendered to the gunman. During the robbery, the victim would switch his focus between the gunman and the driver of the vehicle in order to determine the best time in which to attempt an escape. The area was illuminated by a streetlight located directly across the street, a porch light on at the victim's house and floodlights on the nearby garage adjacent to the victim's residence. The victim was about three or four feet away from the car and, because of lighting in the area and in the vehicle, he was able to observe both the gunman, with whom he stood face-to-face, and the vehicle's driver. The victim noticed that the vehicle driver was a skinny black male with a short, shaved haircut and that he was wearing a dark shirt. The driver looked around in an anxious manner as if to hurry the gunman. At some point during the commission of the crime, the victim heard the robber yell something.
As the gunman took the key ring from the victim, he lowered the gun from the victim's head. Seeing this as his opportunity to escape, J.B. turned and began to walk away. As he moved forward, J.B. heard a sound behind him that sounded like a gunshot. The victim began moving faster towards his house. Hearing the vehicle begin to drive away, J.B. turned to see the license plate that read "Caesar." J.B. ran into his house and asked his sister-in-law to notify police that he had been the victim of an armed robbery.
Within approximately 15 minutes after the call was made to police, Deputy Albert Hymel of the Jefferson Parish Sheriff's Office arrived at the victim's house. Officer Hymel took a report and a bulletin was issued on police radio giving a description of the assailant's vehicle and the two occupants.
Officer Wade St. John of the Jefferson Parish Sheriff's Office testified that he was patrolling the area near the robbery when he heard the police radio broadcast. Officer St. John observed a vehicle meeting the given description located on Cousins *940 Street and Barataria Boulevard, proceeding north towards the Westbank Expressway. Officer St. John advised Headquarters, and thereafter stopped the vehicle and ordered the occupants out of the car. Inside the auto a loaded black .25 Baretta was located on the floorboard of the passenger side. The officer also observed a large amount of U.S. currency between the driver's and passenger's seat.
Deputy Hymel, who took the initial report, asked the victim if he would like to take a ride to the scene of the stop for possible identification. The victim agreed and was taken to the area where the stop occurred. There were a lot of police cars, and the victim was asked if he could identify anything.
Upon their arrival at the scene, the two suspects were located about 15 feet from Officer Hymel's vehicle. The area was illuminated with street lights, and the lights of the patrol cars were shining on the defendants. Officer Hymel asked J.B. if either of the two black males at the scene looked familiar. The victim positively identified the two black males as the men who had earlier participated in the armed robbery. J.B. was also able to distinguish between the gunman, who was later identified as Nyren Ruffin, and the driver, who was later identified as John Saylor. The suspects were dressed in the same clothes they wore at the time of the armed robbery. J.B. also recognized the car.
At the scene, J.B. was able to see inside the vehicle and he noticed and identified his red key ring that was left on the seat of the suspect's car. The police placed the handgun on the trunk of the police vehicle, where J.B. saw it and identified this as the robbery weapon.
The defense called former co-defendant, Nyren Ruffin. Ruffin testified before the jury that on the night in question Saylor, was driving the car. According to Ruffin, Saylor, who was not his friend, knew nothing about Ruffin's intent to rob anyone. Ruffin also testified that Saylor did not see the gun as Ruffin held it to his side. Ruffin asked Saylor two or three times to stop the vehicle before Saylor complied. According to Ruffin, after this robbery, the pair was not riding around looking for another victim to rob, but rather they were going to bring Saylor home. Ruffin denied talking to Saylor since their arrests.
Ruffin stated that he did not prevent Saylor from stopping the car and getting out.

ASSIGNMENT OF ERROR NUMBER ONE
Saylor alleges that the State failed to meet its burden of proof, as to his intent to participate in the armed robbery, or in any robbery, committed by Mr. Ruffin, and failed to disprove a reasonable hypothesis of innocence.
Saylor contends that the evidence was insufficient to convict him as a principal to armed robbery, as there is no evidence to prove he intended to rob J.B. In the alternative, Saylor contends that if this Court finds that he was a participant to robbery, that he is only guilty of the crime of simple robbery. The State counters that the jury correctly found the defendant guilty as a principal to armed robbery because of his participation as a lookout and driver of the get-away car. We note that Saylor did not file a Post-Verdict Motion for Acquittal challenging the sufficiency of the evidence pursuant to LSA-C.Cr.P. art. 821. However, such failure does not preclude appellate review of the sufficiency of the evidence.[1]
*941 The standard for appellate review of the sufficiency of the evidence is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.[2] Under Jackson, a review of a criminal conviction record for sufficiency of evidence does not require a court to ask whether it believes that the evidence at the trial established guilt beyond a reasonable doubt. A reviewing court is required to consider the whole record and determine whether a rational trier of fact would have found guilt beyond a reasonable doubt.[3]
In this case, Saylor was charged with armed robbery, which is defined, in pertinent part, as follows:
LSA-R.S. 14:64. Armed Robbery.
A. Armed robbery is the taking of anything of value belonging to another from the person of another or that is in the immediate control of another, by use of force or intimidation, while armed with a dangerous weapon.
All persons can be convicted as a principal to a crime if he is "concerned in the commission of a crime, whether present or absent, and whether they directly commit the act constituting the offense, aid and abet in its commission, or directly or indirectly counsel or procure another to commit the crime." La. R.S.-14:24.[4] Not all principals are automatically guilty of the same grade of offense as the main offender because the mental state of the offenders may be different.[5] Thus, "an individual may only be convicted as a principal for those crimes which he personally has the requisite mental state." The intent of the accomplice cannot be inferred to the accused.[6]
Specific intent is "that state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act."[7] Because specific intent is a state of mind, it need not be proven as a fact, but may be inferred from the circumstances of the transaction and the actions of the defendant.[8] The issue of specific intent is a question of fact.[9]
When circumstantial evidence forms the basis of the conviction, such evidence must consist of proof of collateral facts and circumstances from which the existence of the main fact may be inferred according to reason and common experience.[10] LSA-R.S. 15:438 mandates that "assuming every fact to be proved that the evidence tends to prove, in order to convict, *942 it must exclude every reasonable hypothesis of innocence."[11]
The evidence is clear that Saylor was not the armed gunman. The question before us is whether the evidence supports a finding that he was culpable as a principal to armed robbery.
We have previously affirmed the conviction, as principal to armed robbery, of a defendant who drove the "gunman" to the crime scene, waited while the gunman got out of the car, pointed the gun at the victims, and took their money, then drove the car away after the gunman returned to the passenger seat.[12] In that case we stated that those actions indicated that the defendant had the requisite mental state to be convicted for armed robbery. Further, a person who acts as a lookout during the commission of a robbery may be found guilty as a principal.[13] Ruffin testified that Saylor was an unsuspecting person present on the night of the crime. Although Ruffin admitted that Saylor drove him to and away from the scene, in all other respects he portrayed Saylor as being an unknowing occupant of his car on the night of the crime. Ruffin alleged that Saylor did not see his gun because he kept it by his side. According to this witness, after the robbery Saylor wanted to go home.
This characterization of Saylor's actions on the night in question is in contrast with that given by the victim. J.B. testified that Saylor transported the gunman to and from the scene. He further testified that this Saylor appeared to keep watch during the commission of the crime. J.B.'s testimony also indicates that Saylor took no actions to prevent the crime, which occurred in his presence, nor did he leave the scene until after his accomplice was safely back in the vehicle. Faced with this conflict in the evidence, the jury apparently chose to believe the victim and disbelieve the gunman.
It is not the function of the appellate court to second-guess the credibility determinations of the trier of fact or to re-weigh the evidence.[14] In evaluating credibility, the trier of fact, when faced with a conflict in testimony, is free to accept or reject, in whole or in part, the testimony of any witness.[15] In the absence of internal contradiction or irreconcilable conflict with physical evidence, one witness's testimony, if believed by the trier of fact, is sufficient to support a conviction.[16]
Based upon the victim's testimony, on Saylor's actions during and immediately following the armed robbery, which was committed in his presence, and in the absence of internal contradiction or irreconcilable conflict with physical evidence, the fact-finders could have reasonably inferred that Saylor had the requisite intent to commit the crime in that he aided its commission by acting as the lookout and driver of the get-away car. Viewing the *943 evidence in the light most favorable to the prosecution, any rational trier of fact could have found that the State proved, beyond a reasonable doubt, that this defendant was a principal to the armed robbery of J.B.
The assignment of error is without merit.
Although he does not assign it as error, Saylor argues in brief that he should be allowed to re-open the hearing on the Motion to Quash the use of his prior conviction. He alleged errors in his earlier plea, but acknowledges to this court that he made no particular showing of specific harm or detrimental reliance, and was unaware that of the necessity to make such showing until mid-hearing.[17] The State filed an opposition to the motion in January, 2001 with a copy of the Guzman opinion attached, and the hearing on the motion was held on March 2, 2001. The record does not support Saylor's assertion to this court, and in the absence of the necessary showing, we decline to remand the matter on this issue.

PATENT ERROR
We have reviewed the record for errors patent, in accordance with LSA-C.C.P. art. 920; State v. Oliveaux, 312 So.2d 337 (La. 1975); and State v. Weiland, 556 So.2d 175 (La.App. 5th Cir.1990), and found none.
For the foregoing reasons, the conviction and sentence are affirmed.
AFFIRMED.
NOTES
[1] State v. Hensley, XXXX-XXXX (La.App. 5th Cir.2/28/01),781 So.2d 834, 843, citing State v. Washington, 421 So.2d 887 (La.1982). Also State v. Bailey, XXXX-XXXX (La.App. 5th Cir.2/14/01) 782 So.2d 22, 27.
[2] Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560, 573 (1979); State v. Ortiz, 96-1609 (La.10/21/97), 701 So.2d 922, 930, cert. denied, 524 U.S. 943, 118 S.Ct. 2352, 141 L.Ed.2d 722, (1998); State v. Barnes, 98-932 (La.App. 5th Cir.2/10/99), 729 So.2d 44, 46, writ denied, 99-1018 (La.9/17/99), 747 So.2d 1099.
[3] Barnes, 729 So.2d at 46.
[4] State v. Mitchell, 99-3342 (La.10/17/00), 772 So.2d 78, 82.
[5] Id. at p. 82.
[6] Id. at p. 82.
[7] La. R.S.14:10(1).
[8] State v. Mitchell, supra, at p. 82.
[9] State v. Cazenave, 2000-183 (La.App. 5th Cir.10/31/00),772 So.2d 854, 860.
[10] State v. Ellwood, XXXX-XXXX (La.App. 5th Cir.2/28/01)783 So.2d 423.
[11] See also State v. Baylis, XXXX-XXXX (La. App. 5th Cir.2/28/01),782 So.2d 129.
[12] State v. Gabriel, 542 So.2d 528, 541(La.App. 5 Cir.1989), writ denied 558 So.2d.566 (La.1990). See also State v. Joseph, 483 So.2d 1109, 1110 (La.App. 1st Cir.1986); State v. Valrie, 99-226 (La.App. 3rd Cir. 10/13/99), 749 So.2d 11.
[13] State v. Smith, 513 So.2d 438, (La.App. 2nd Cir.1987); State v. Dominick, 545 So.2d 1149 (La.App. 4th Cir.1989).
[14] State v. Bailey, XXXX-XXXX (La.App. 5th Cir.2/14/01), 782 So.2d 22.
[15] State v. Silman, 95-0154 (La.11/27/95), 663 So.2d 27, 35.
[16] State v. Stec, 99-633 (La.App. 5th Cir.11/30/99), 749 So.2d 784, 787.
[17] See State v. Guzman, 99-1528 (La.5/16/00), 769 So.2d 1158.