# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

### 16-187

STATE OF LOUISIANA

VERSUS

STONEY J. LAPOINT

**********

APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF ACADIA, NO. 79,031
HONORABLE JOHN DAMIAN TRAHAN, DISTRICT JUDGE

**********

## ULYSSES GENE THIBODEAUX
## CHIEF JUDGE

**********

Court composed of Ulysses Gene Thibodeaux, Chief Judge, Shannon J. Gremillion, and D. Kent Savoie, Judges.

**AFFIRMED.**

Keith A. Stutes
District Attorney – 15th Judicial District Court
P. O. Box 3306
Lafayette, LA 70502-330
Telephone: (337) 232-5170
COUNSEL FOR:
    Plaintiff/Appellee - State of Louisiana

Burleigh G. Doga
Assistant District Attorney – 15th Judicial District Court
P. O. Box 288
Crowley, LA 70526
Telephone: (337) 788-8831
COUNSEL FOR:
    Plaintiff/Appellee - State of Louisiana

**Edward Kelly Bauman**
**Louisiana Appellate Project**
**P. O. Box 1641**
**Lake Charles, LA 70602**
**Telephone:  (337) 491-0570**
**COUNSEL FOR:**
     **Defendant/Appellant - Stoney J. LaPoint**

**THIBODEAUX, Chief Judge.**

Defendant Stoney J. LaPoint was charged by bill of information with one count of aggravated incest in violation of La.R.S. 14:78.1. A jury found him guilty of the responsive verdict of attempted indecent behavior with juveniles in violation of La.R.S. 14:27 and La.R.S. 14.81. The jury found the victim to be under the age of thirteen at the time of the offense, and LaPoint was sentenced to the maximum sentence of twelve and one-half years at hard labor.

LaPoint now appeals his conviction, arguing that the trial court erred in admitting prejudicial "other crimes" evidence, and erred in finding him guilty of attempted indecent behavior with juveniles. We disagree. For the following reasons, we affirm Defendant's conviction.

## I.

## ISSUES

We must determine:

(1)    whether the jury erred in finding there was sufficient evidence to find Stoney LaPoint guilty of attempted indecent behavior with juveniles;

(2)    whether the jury erred in admitting prejudicial other crimes evidence.

## II.

## FACTS AND PROCEDURAL HISTORY

Stoney LaPoint married Ashley LaPoint in 2004. Ashley had three children from a prior relationship: one boy and two girls, including E.R.[1] The family moved to Church Point, Louisiana in 2007, where Ashley frequently

---

[1] In accordance with La.R.S. 46:1844(W), the victim's initials are used throughout.

worked long hours and LaPoint stayed at home with the children.  Ashley testified

that on September 2, 2011, E.R. called to tell her that Megan Dubree, E.R.'s friend,

had something to tell her.  According to the testimony provided by Ashley and

E.R., Megan told Ashley that LaPoint had been "messing" with E.R.  Ashley

confronted LaPoint, who claimed to be innocent and encouraged her not to contact

the police.  Ashley and her children thereafter left the home, and Ashley took E.R.

to the Office of Community Services (OCS) to report the accusations.  A doctor's

appointment was scheduled so that E.R. could be examined, and Ashley contacted

the Church Point Police Department.   LaPoint was later arrested.

E.R. accused her step-father, LaPoint, of committing "countless"

sexual acts against her, including vaginal penetration and oral sex, from the time

she was nine years old until she was thirteen years old.

III.

## LAW AND DISCUSSION

**Sufficiency of the Evidence**

LaPoint first argues that the evidence introduced at trial was

insufficient to convict him of attempted indecent behavior with juveniles.

> A.    Indecent behavior with juveniles is the
> commission of any of the following acts with the
> intention of arousing or gratifying the sexual desires of
> either person:
>
> (1) Any lewd or lascivious act upon the person or
> in the presence of any child under the age of seventeen,
> where there is an age difference of greater than two years
> between the two persons.  Lack of knowledge of the
> child's age shall not be a defense; or
>
> (2) The transmission, delivery or utterance of any
> textual, visual, written, or oral communication depicting
> lewd or lascivious conduct, text, words, or images to any

2

person reasonably believed to be under the age of seventeen and reasonably believed to be at least two years younger than the offender. It shall not be a defense that the person who actually receives the transmission is not under the age of seventeen.

La.R.S. 14.81.[2]

A. Any person who, having a specific intent to commit a crime, does or omits an act for the purpose of and tending directly toward the accomplishing of his object is guilty of an attempt to commit the offense intended; and it shall be immaterial whether, under the circumstances, he would have actually accomplished his purpose.

La.R.S. 14:27.[3]

The standard for appellate review of the sufficiency of the evidence is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed. 560, 573 (1979); *State v. Ortiz*, 96-1609 (La.10/21/97), 701 So.2d 922, 930, *cert. denied*, 524 U.S. 943, 118 S.Ct. 2352, 141 L.Ed.2d 722 (1998); *State v. Barnes*, 98-932 (La.App. 5th Cir. 2/10/99), 729 So.2d 44, 46, *writ denied*, 99-1018 (La. 9/17/99), 747 So.2d 1099.

Under *Jackson*, a review of a criminal conviction record for sufficiency of evidence does not require a court to ask whether it believes that the evidence at the trial established guilt beyond a reasonable doubt. *Barnes*, 729 So.2d at 46. A reviewing court is required to consider the whole record and determine whether a rational trier of fact would have found guilt beyond a reasonable doubt. *Id.*

*State v. Harrell*, 01-841, p. 6 (La.App. 5 Cir. 2/26/02), 811 So.2d 1015, 1018.

---

[2]The version of La.R.S. 14:81 that is cited is the current version, reflecting amendments made in 2009 and 2010 and reflecting the version in effect in 2011. The bill of information charges LaPoint with committing the offense between September 2007 and September 2011.

[3]Although La.R.S. 14:27 was amended in 2010, the amendment was only to the penalty provision, not the relevant provision above cited.

Thus, other than ensuring the sufficiency evaluation standard of *Jackson*, "the appellate court should not second-guess the credibility determination of the trier of fact," but rather, it should defer to the rational credibility and evidentiary determinations of the jury. *State v. Ryan*, 07-504, p. 2 (La.App. 3 Cir. 11/7/07), 969 So.2d 1268, 1270 (*quoting State v. Lambert*, 97-64, pp. 4-5 (La.App. 3 Cir. 9/30/98), 720 So.2d 724, 726-27). An appellate court may, however, impinge on the fact finder's discretion and its role in determining the credibility of witnesses "only to the extent necessary to guarantee the fundamental protection of due process of law." *State v. Mussall*, 523 So.2d 1305, 1310 (La.1988).

> A victim or witness's testimony alone is usually sufficient to support the verdict, as appellate courts will not second-guess the credibility determinations of the fact finder beyond the constitutional standard of sufficiency. *State v. Davis*, 02-1043, p. 3 (La. 6/27/03); 848 So.2d 557, 559. In the absence of internal contradiction or irreconcilable conflict with physical evidence, one witness's testimony, if believed by the fact finder, is sufficient support for a requisite factual conclusion. *State v. Robinson*, 02-1869, p. 16 (La. 4/14/04); 874 So.2d 66, 79.

*State v. Dorsey*, 10-216, pp. 43-44 (La. 9/7/11), 74 So.3d 603, 634, *cert. denied*, __U.S.__, 132 S.Ct. 1859 (2012).

E.R. was born on January 23, 1998, and was seventeen years old at the time of trial. E.R. testified that there were "countless" times in which LaPoint would force her to engage in oral sex, fondling, and sexual intercourse. She testified that the sexual assault began when she was just nine years old and continued until she was thirteen. E.R. further explained to the jury that she did not initially tell her mom about the sexual assault because she was afraid of LaPoint. She described her home life as violent, and testified that LaPoint was abusive toward her mother, and toward her and her siblings. She recounted instances in

which LaPoint would "slam [her] into walls," whip her, and leave bruises on her body. LaPoint kept E.R. fearful by telling her that he had shot people in the past and gotten away with it. E.R. stated that she ultimately confided in Megan Dubree about the ongoing sexual assault, and it was Megan who first informed E.R.'s mother of the abuse. E.R. denied being coerced by her mother to incriminate LaPoint, and denied that she was lying.

In her testimony, Ashley affirmed it was Megan that informed her of LaPoint's sexual abuse. She testified that although LaPoint denied the accusation, E.R. insisted that it was true. Ashley then removed her children from the home and reported the abuse to proper authorities.

Dr. Scott Bergstedt, an expert in forensic examination of sexual child abuse, examined E.R. after the abuse was reported. He testified that during the examination, E.R. reported a history of repeated sexual abuse by LaPoint. She reported being sexually abused approximately five times a month, in which she would be forced to engage in vaginal penetration, oral sex, and fondling. Dr. Bergstedt further testified that only "hymenal remnants" remained in E.R.'s vaginal area, indicating repeated episodes of penetration. Although he did not find any tears, bruising, or lacerations to the vaginal area, Dr. Bergstedt found this to be consistent with E.R's account that she had been last sexually abused three to four months prior to the examination.

When asked if he could draw any conclusion to a reasonable degree of medical certainty as to whether E.R. had been the victim of repeated sexual abuse, particularly penetration, Dr. Bergstedt confirmed that he could. He testified that due to his medical findings and E.R.'s disclosure, he could conclude "there was sexual abuse to some degree," although he could not identify the abuser. Further,

although E.R. testified she was once raped by Farrell Soileau in 2007, Dr. Bergstedt determined the damage to her hymen was inconsistent with a single rape. The hymenal remnants not only indicated repeated episodes of penetration, but indicated that someone other than Farrell Solieau had sexually assaulted E.R. as well.

We find E.R.'s testimony did not contain internal contradictions or irreconcilable conflicts with the physical evidence. Her testimony was consistent with what she reported to the doctor and the doctor's findings. Although Dr. Bergstedt could not identify E.R.'s abuser, E.R. assuredly named LaPoint. Further, Dr. Bergstedt reported evidence of repeated penetration, which was also consistent with E.R.'s account of repeated sexual assault. Moreover, although Megan ultimately denied knowing of E.R.'s sexual assault and denied informing Ashley of the abuse, no other evidence was admitted to sufficiently contradict E.R.'s testimony or Dr. Bergstedt's findings. Thus, following *Dorsey*, we find the witness's testimony, including that of E.R., Ashley, and Dr. Bergstedt, and as believed by the factfinder, was sufficient to support the jury's verdict.

**Admission of Other Crimes Evidence**

LaPoint next argues the trial court erroneously admitted prejudicial other crimes evidence of his 1995 convictions for sexual battery.

> A trial court's ruling on the admissibility of evidence is reviewed for an abuse of discretion. *State v. Cosey*, 97-2020 (La. 11/28/00), 779 So.2d 675, 684. This same standard is applied to rulings on the admission of other crimes evidence and evidence under La. C.E. art. 412.2. *State v. Merritt*, 04-204 (La.App. 5 Cir. 6/29/04), 877 So.2d 1079, 1085, *writ denied*, 04-1849 (La. 11/24/04), 888 So.2d 228; *State v. Humphries*, 40,810 (La.App. 2 Cir. 4/12/06), 927 So.2d 650, 656, *writ denied*, 06-1472 (La. 12/15/06), 944 So.2d 1284.

*State v. Wright*, 11-141, pp. 10-11 (La. 12/6/11), 79 So.3d 309, 316.

Louisiana Code of Evidence Article 403 provides that "evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or waste of time." However, La.Code Evid. art. 412.2 also states in pertinent part:

> A. When an accused is charged with a crime involving sexually assaultive behavior, or with acts that constitute a sex offense involving a victim who was under the age of seventeen at the time of the offense, evidence of the accused's commission of another crime, wrong, or act involving sexually assaultive behavior or acts which indicate a lustful disposition toward children may be admissible and may be considered for its bearing on any matter to which is relevant subject to the balancing test provided in Article 403.

In *Wright*, the supreme court determined that the "trial court is afforded great gatekeeping discretion in determining what evidence is deemed admissible." *Wright*, 79 So.3d at 317. In weighing the probative value versus the prejudicial effect of the other crimes evidence before it, the supreme court examined the similarities between the other crimes evidence and the offense currently before it. *Id.* Finding that the similarities between the two acts "were sufficiently probative to support the admission" of other crimes evidence, the supreme court noted that the "evidence demonstrates [the] defendant had a propensity for sexual activity with adolescents where he held a position of authority, and where the adolescent children were in the household." *Id*. at 317-18. In *Wright*, the supreme court found that the other crimes evidence was not so prejudicial as to warrant exclusion.

Here, the only similarity between LaPoint's 1995 convictions and the present offense is that both constitute sexual offenses committed against juveniles under the age of fifteen. Although the evidence presented suggests LaPoint was able to exercise control over E.R. due to their familial relationship, there is no evidence as to his relationship with the victims of his 1995 convictions. Thus, we determine the past and current offenses are similar only to the extent that they demonstrate LaPoint's propensity towards juveniles under the age of fifteen, and are not so prejudicial as to warrant exclusion.

> Any inculpatory evidence is "prejudicial" to a defendant, especially when it is "probative" to a high degree. As used in the balancing test, "prejudicial" limits the introduction of probative evidence of prior misconduct only when it is unduly and unfairly prejudicial. The term "unfair prejudice," as to a criminal defendant, speaks to the capacity of some concededly relevant evidence to lure the factfinder into declaring guilt on a ground different from proof specific to the *offense charged* (emphasis added).

*Wright*, 79 So.3d at 318 (quoting *State v. Rose*, 06-402 (La. 2/22/07), 949 So.2d 1236, 1244).

Because there was some similarity between the 1995 convictions and the present offense charged, and because the evidence presented and the jury's verdict indicate the jury did not determine guilt based on a ground different from proof specific to the offense charged, the prejudicial effect of LaPoint's 1995 convictions did not outweigh their probative value. Consequently, we find the trial court did not err in admitting the 1995 convictions.

Moreover, because we determined that witness testimony alone was sufficient for a jury to find LaPoint guilty of attempted indecent behavior with juveniles, and because the jury returned a verdict for the lesser responsive verdict,

we cannot conclude that the admission of the 1995 convictions enticed the jury to find him guilty of the *offense* charged—aggravated incest.

Finally, we find that even if the other crimes evidence was improperly admitted, the error would be harmless. "[I]t is well established jurisprudence in Louisiana that inadmissible other-crimes evidence is subject to a harmless error analysis." *State v. Barnes*, 13-576, p. 3 (La.App. 3 Cir. 12/11/13), 127 So.3d 1070, 1073, *writ denied*, 14-43 (La. 6/13/14), 140 So.3d 1188. Louisiana courts have adopted the harmless error test announced in *Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824 (1967):

> *Chapman* tests whether it appears "beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained." 386 U.S. at 24; 87 S.Ct. at 828. An error did not "contribute" to the verdict when the erroneous trial feature is unimportant in relation to everything else the jury considered on the issue. *Yates v. Evatt*, 500 U.S. 391, 403, 111 S.Ct. 1884, 1893, 114 L.Ed.2d 432 (1991), *overruled as to standard of review for erroneous jury instructions in Estelle v. McGuire*, 502 U.S. 62, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991).
>
> *Chapman* was refined in *Sullivan v. Louisiana*, 508 U.S. 275, 113 S.Ct. 2078, 124 L.Ed.2d 182 (1993). The *Sullivan* inquiry "is not whether, in a trial that occurred without the error, a guilty verdict would surely have been rendered, but whether the guilty verdict actually rendered in *this* trial was surely unattributable to the error." *Id.*, 508 U.S. at [279], 113 S.Ct. at 2081. This Court adopted the *Sullivan* refinement of *Chapman*. *See State v. Code*, 627 So.2d at 1384; *State v. Bourque*, 622 So.2d at 241 fn.20.

*State v. Johnson*, 94-1379, pp. 13-14 (La. 11/27/95), 664 So.2d 94, 100.

Because E.R.'s testimony, Ashley's testimony, and the physical evidence of repeated sexual penetration supported the jury's responsive verdict of attempted indecent behavior with juveniles, we find the jury's verdict was surely

9

unattributable to the admission of LaPoint's prior convictions, even if the evidence was erroneously admitted.

## IV.

## **ERRORS PATENT**

In accordance with La.Code Crim.P. art. 920, all appeals are reviewed for errors patent on the face of the record. After reviewing the record, we find one error patent.

The record does not indicate that the trial court advised LaPoint of the prescriptive period for filing post-conviction relief as required by La.Code Crim.P. art. 930.8. Although the record does reflect that within a month of sentencing LaPoint filed a Uniform Application for Post-Conviction Relief seeking an appeal, the record does not indicate that the trial court informed him, verbally or in writing, of the prescriptive period for filing.

We thus order the trial court to send appropriate written notice to LaPoint within ten days of the rendition of this opinion and to file written proof in the record that he received such notice. *State v. Roe*, 05-116 (La.App. 3 Cir. 6/1/05), 903 So.2d 1265, *writ denied*, 05-1762 (La. 2/10/06), 924 So.2d 163.

## V.

## **CONCLUSION**

Accordingly, we affirm Defendant's conviction for attempted indecent behavior with juveniles. We order the trial court to properly inform Defendant of the prescriptive period of filing post-conviction relief within ten days of the rendition of this opinion.

**AFFIRMED**.

10