# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

### 16-994


**STATE OF LOUISIANA**

**VERSUS**

**TIMOTHY EUGENE DOWDEN, SR.**


**\*\*\*\*\*\*\*\*\*\***


APPEAL FROM THE
ELEVENTH JUDICIAL DISTRICT COURT
PARISH OF SABINE, NO. 73621
HONORABLE STEPHEN BRUCE BEASLEY, DISTRICT JUDGE

**\*\*\*\*\*\*\*\*\*\***

**D. KENT SAVOIE**
**JUDGE**

**\*\*\*\*\*\*\*\*\*\***

Court composed of Elizabeth A. Pickett, Phyllis M. Keaty, and D. Kent Savoie, Judges.


**AFFIRMED.**

**Don M. Burkett**
**District Attorney, Eleventh Judicial District Court**
**Anna L. Garcie**
**Assistant District Attorney**
**Post Office Drawer Box 1557**
**Many, LA 71449**
**(318) 256-6246**
**COUNSEL FOR APPELLEE:**
    **State of Louisiana**

**Edward K. Bauman**
**Louisiana Appellate Project**
**Post Office Box 1641**
**Lake Charles, LA 70602-1641**
**(337) 491-0570**
**COUNSEL FOR DEFENDANT/APPELLANT:**
    **Timothy Eugene Dowden, Sr.**

**SAVOIE, Judge.**

Defendant, Timothy Eugene Dowden, Sr., was charged by bill of information with indecent behavior with a juvenile, a violation of La.R.S. 14:81. A jury trial was held, and on March 16, 2016, Defendant was found guilty of the lesser included offense of attempted indecent behavior with a juvenile, a violation of La.R.S. 14:27 and 14:81.

On June 16, 2016, Defendant was sentenced to three years at hard labor. Defendant objected to the sentence and subsequently filed a motion to reconsider sentence which was denied on July 28, 2016. Defendant now appeals, assigning two errors.

## FACTS

C.R.,[1] the victim, was friends with Defendant's daughter who were both fourteen years old at the time of the incident. The incident occurred on October 2, 2012, while C.R. was spending the weekend at their house. On Friday evening, Defendant's daughter, C.R., Defendant, his girlfriend, and the girlfriend's friend, Brandi O'Neill (Ms. O'Neill or female friend), along with some other people, were at Defendant's home. The adults were drinking alcoholic beverages. At some point in the night, Defendant was going to drive Ms. O'Neill and her sons back to her apartment. Defendant's daughter and/or Defendant asked C.R. to ride with Defendant in case he got lost because he and Ms. O'Neill had been drinking. C.R. sat in the middle of the truck cab, while Defendant drove and Ms. O'Neill rode on

---

[1] The victim's initials are used to protect her identity in accordance with La.R.S. 46:1844(W).

the passenger's side. During the drive to Ms. O'Neill's apartment, Defendant was masturbating while rubbing C.R.'s leg when he would shift gears.

On May 22, 2014, an arrest warrant was issued for Defendant.

At trial, Stuart Anthony, a deputy for the Sabine Parish Sheriff's Office, testified that he responded to a call received on October 3, 2012, regarding a "sexual battery involving a juvenile." The officer recalled he arrived at the victim's residence around 10:00 p.m. After getting permission from the victim's mother to speak to the victim, the victim gave a written statement. The statement was admitted into evidence.[2] After taking the statement and interviewing C.R. and her mother, the officer prepared a report. At trial, the deputy testified that he noted, in his report, C.R. stated every time Defendant would shift gears in the truck, he would rub her leg. Additionally, C.R. talked about Defendant's hand moving "up and down." On cross-examination, the deputy acknowledged his report, based on C.R.'s interview, did not contain the words penis or masturbation. The deputy referred the matter to a detective who referred the victim to Project Celebration, a non-profit organization which is part of the Child Advocacy Center.

Fred Denham, a former officer with the Sabine Parish Sheriff's Office, testified at trial that he was involved with the investigation while employed by the sheriff's office. He recalled being present when the victim was interviewed at Project Celebration on October 5, 2012. During the interview which was conducted by the Project Celebration counselor, the officer discovered there were three people in the vehicle when the alleged incident occurred: they included the

---

[2]Although C.R.'s written statement was admitted into evidence, the record does not indicate that it was shown to the jury. In the statement, C.R. wrote that while she was riding in the truck with Defendant and the female friend, Defendant would rub her leg when he shifted gears and she saw his hand moving up and down.

victim, Defendant, and a passenger. The officer admitted, to his knowledge, the passenger was not interviewed.

Jason Rivers, a former employee of the Sabine Parish Sheriff's Office, testified that he interviewed Defendant in September 2013. He recalled the matter concerned Defendant having a sexual relationship with Defendant's daughter. Also, Mr. Rivers questioned Defendant about exposing himself and masturbating in front of C.R. Defendant denied C.R. ever rode in his truck.

Brandy Goins, employed by Project Celebration, conducted a video-taped interview with the victim on October 5, 2012. Law enforcement officers, Daryl Cassell and Fred Denham, and a co-worker at Project Celebration, Carrisa McCormick, observed the interview. Mrs. Goins testified that she informed C.R. there were "people that help children watching in another room." Additionally, Mrs. Goins explained that C.R. knew the interview was being recorded. The DVD of the interview was admitted into evidence and played for the jury.

A review of the DVD indicated the victim explained that she was staying with Defendant's daughter and another friend at Defendant's home for the weekend. On Friday, Defendant, his girlfriend, and another female friend were at the house. C.R. recalled Defendant's girlfriend had passed out from drinking. When Defendant was about to take the female friend home, he asked C.R. several times to ride with them. C.R. rode in the cab of the truck. She was in the middle, Defendant was driving, and the female friend was on the passenger's side. The female friend's children were in the back of the truck. As they drove to the female friend's home, C.R. recalled Defendant rubbed the shin of her leg from the knee down every time he would shift gears. During the trip, she noticed Defendant's hand moving back and forth and saw his penis. She described Defendant as

3

"jacking off." C.R. stated Defendant was wearing khaki shorts and a t-shirt. Also, Defendant asked C.R. repeatedly if she was scared. C.R. stated she had her cell phone with her in the truck, and she was communicating with Defendant's daughter.

During the interview, C.R. noted that they dropped the female friend and her children off at an apartment. C.R. stated that on the ride back to Defendant's home, she moved over to the passenger's side of the truck. She explained the gear shift was hurting her knee. C.R. further recalled, on the trip back to Defendant's home, Defendant told her she was sexy for a fourteen year old and asked her if she wanted to go swimming.

When they arrived back at Defendant's home, C.R. stated that she jumped out of the truck and told her friends what had happened. Defendant's girlfriend asked them several times what was going on, and they told her.

C.R. stated that Defendant did not bother her anymore that weekend, and she stayed at Defendant's home until Sunday. C.R. was of the opinion Defendant may not recall what happened because he was drunk.

During C.R.'s testimony at trial, the State questioned her about what happened in the truck, and the following pertinent exchange occurred:

> A. We were going down the road and he-- every time he went to shift, he would rub down my leg and back up it and then he kept asking if I was scared and I didn't know why. And then I looked over to my left and I see something that I shouldn't have seen. It wasn't supposed to happen.
>
> Q. Okay. Well, tell me because I need you to-- I need you to be and I know it's hard, okay, but I need you to be specific about what you saw.
>
> A. He was over there jacking off next to me while he was driving down the road.

4

Q. Now, did you see his hands?

A. Yes, ma'am.

Q. What were his hands doing?

A. Jacking off.

Q. What were his hands doing?

A. Going up and down.

Q. Okay. Were his hands touching something while they were going up and down?

A. Yes, ma'am.

Q. What was that?

A. His penis.

Q. And you saw his penis?

A. Yes, ma'am.

C.R. recalled that it was dark in the truck. The only lights in the truck were from the dashboard lights. She denied there was any light coming off the cell phone she had with her in the truck. C.R. further testified that Ms. O'Neill, who was also in the cab of the truck, did not see anything. C.R. stated that, after dropping off Ms. O'Neill, she moved over to the passenger's side of the truck. On the trip back, Defendant asked C.R. if she wanted to go swimming, and he also asked if she was scared.

When C.R. returned home, she told her mother what happened, and her mother called the police.

On cross-examination, the following pertinent exchange occurred:

Q. I'm going to ask you some questions now based on what you said happened, okay, and I'm going to be asking some really specific questions. I'm not trying to embarrass you or confuse you or anything, okay? What you say happened was that Mr. Dowden was

5

driving down the road with his penis in his hand jacking off. Is that correct?

A.    Yes, sir.

Q.    His penis was out of his pants?

A.    Yes, sir.

Q.    He was wearing shorts or long pants?

A.    I don't remember.

Q.    You don't remember?

A.    No, sir.

Q.    Do you remember were the pants unzipped, were they pulled down to his ankles?

A.    No, sir.

Q.    Okay. What hand was he using to masturbate with, right or left?

A.    His right hand.

Q.    His right hand?

A.    Yes, sir.

Q.    Okay. But you clearly saw his penis in his right hand?

A.    Yes, sir.

Following, Defendant's attorney questioned C.R. about the passenger and the following pertinent exchange occurred:

Q.    The passenger, Brandi, she's sitting in the passenger seat, window is right here?

A.    Yes, sir.

Q.    Kids are in the bed of the truck?

A.    Yes, sir.

Q. So if I am sitting here and my children are in the bed of the truck and I've got to look and see what they're doing, I look to my left to look back through the rear window of the truck. It's your testimony that Brandi never saw Mr. Dowden with his penis out masturbating while driving down the road?

A. Yes, sir.

Q. It's your testimony that Mr. Dowden was repeatedly asking you are you scared, are you scared, are you scared and she never looked over and said what you suppose [sic] to be scared of?

A. No, sir.

Q. She never said or did anything?

A. No, sir.

Q. She just sat there?

A. Yes, sir.

C.R. acknowledged in her statement to police she stated she saw Defendant's hand moving up and down, but she did not say or write the word penis. Additionally, C.R. admitted she went back to Defendant's house on other occasions after the incident to spend time with his daughter, but she did not stay overnight. Also, she recalled she once went swimming with Defendant and his daughter.

Defendant's daughter was seventeen years old at the time of trial. She lived with her father in a three bedroom trailer. On the night in question, she asked C.R. to ride with her dad to bring Ms. O'Neill home because her dad and Ms. O'Neill were drunk. Defendant's daughter recalled the female friend's kids were in the back of the truck, C.R. was on the passenger side of the truck, Ms. O'Neill was in the middle and her dad was driving. While they were in the truck, Defendant's daughter spoke to C.R. on the phone.

She testified that, when C.R. returned to her house, she told her Defendant had been playing with himself in front of her, and he asked C.R. if she was scared.

7

Initially, during the testimony, she stated she did not believe what C.R. said had happened, but later in her testimony, she said she did believe C.R. Additionally, she testified her dad had done "stuff" with her similar to what C.R. alleged.

Defendant's daughter stated she went to Project Celebration on August 30, 2013, and she spoke to Mrs. Goins. The interview was video recorded and shown to the jury.

A review of the DVD indicates that Defendant's daughter stated when she was seven or eight years old her father would, with his hands, touch her boobs and vagina inside of her clothes. She explained he would touch her inside her vagina with his hand. Additionally, he would ask her to touch his penis, but she refused. When she was younger, her mother witnessed Defendant touch her. Defendant's daughter further stated as she got older, her dad would watch pornography and play with his penis until he finished in front of her. She had also seen him have sex with women he would bring to the house, and her dad would give her details about him having sex with women. She recalled that her dad asked her to show him her body parts, but she refused. Most recently, about a month before the interview, she testified that her father rubbed his exposed penis against her leg and asked her to touch it, but she refused. She further stated that her dad offered her a cell phone in exchange for sex, but she refused. She described the inappropriate behavior as continuous except for the time she lived with her half-sister in Oregon for six months. She recalled that her dad behaved similarly with her half-sister when she lived with him. Defendant was not her half-sister's father. She advised that she was scared to let her friends come over to her house after the incident between C.R. and her dad. She also stated her dad sent one of her friend's several messages saying that he was lonely.

At trial, Defendant's daughter testified that, because of what happened with her dad, she suffered from post-traumatic stress disorder. She was on medication for her condition, and she had tried to harm herself twice. She acknowledged that she was still on medication, and she still saw a counselor. She admitted that she had been hospitalized twice as result of her condition. She explained her mother also suffered from the disorder.

Mrs. O'Neill also testified about the night in question. Mrs. O'Neill was asked what she saw on the drive to her apartment, and the following pertinent exchange occurred:

Q. Did you see, during this truck ride, Mr. Dowden remove his penis from his pants?

A. No, sir.

Q. Did you see him masturbate while he was in the truck?

A. No, sir.

Q. Do you think that you would have been able to see him if this happened?

A. Uh, I had a pretty good peripheral vision because I was trying to keep my eye on the boys in the back so yeah, constantly watching them and I mean I think as a parent I would have noticed something like that.

Q. So if I'm you and I'm sitting in the passenger seat--

A. Yes, sir.

Q. -- are my children in the bed of the truck?

A. Yes, sir.

Q. Did you have occasion to keep an eye on them?

A. Yes, sir.

Q. And how did you do that?

9

A. I kept looking over my shoulder, you know, to look.

Q. You're looking over your left shoulder, aren't you?

A. Yes, sir.

Q. So if you do that, that would bring your vision directly back to Ms. R. (juvenile) and Mr. Dowden?

A. Yes, sir.

Q. There's been previous testimony that he was sitting in the driver's seat masturbating with his right hand. Would you be in a position to see that happen?

A. Yes, sir.

Q. Did you see that happen?

A. No, sir.

Q. There's also been testimony that when he shifted gears, he would grab Ms. R. (juvenile) leg. Did you ever see that happen?

A. No, sir.

Q. Did you ever hear Mr. Dowden ask Ms. R. (juvenile) are you scared over and over?

A. No, sir.

Q. Was the radio up loud?

A. No, sir.

Q. Was the radio on at all?

A. No, sir.

Q. Was there light in the truck from the dashboard?

A. Uh, just, you know, the normal light that you see.

Q. Did you fall asleep or anything during this ride?

A. No, sir.

Q. So you're positive Mr. Dowden wasn't masturbating on the drive over?

10

A.     No-- yeah, I'm positive about that.

Q.     Did you spend the night at Millbrooke or did you come back to Toro Church Road?

A.     Back to Toro Church.

Q.     Where did you ride on the way back from Millbrooke?

A.     Uh, in the middle.

Q.     You and C.R. (juvenile) switched?

A.     Yes, sir.

Q.     On the ride back?

A.     Yes, sir.

Q.     Did she ask you to switch?

A.     No, sir.

Q.     Or [sic] you or were you at the time physically involved with Mr. Dowden?

A.     No, sir.

Q.     Have you ever been physically intimate with Mr. Dowden?

A.     No, sir.

Ms. O'Neill further stated that she drank about an eighteen pack of beer that night.

## ERRORS PATENT

In accordance with La.Code Crim.P. art. 920, all appeals are reviewed for errors patent on the face of the record. After reviewing the record, we must determine whether the trial court's failure to delay sentencing for twenty-four hours after denying Defendant's motion for new trial and motion for post-verdict judgment of acquittal constitutes an error patent.

11

Louisiana Code of Criminal Procedure Article 873 requires a sentencing delay of twenty-four hours after the denial of a motion for new trial or a motion in arrest of judgment, unless the defendant expressly waives the delay or pleads guilty, in which case the sentence may be imposed immediately. Louisiana jurisprudence also allows for an implied waiver under certain circumstances.

At the close of trial on March 16, 2016, the trial judge ordered a pre-sentence investigation report and set sentencing for June 16, 2016. On June 16, 2016, defense counsel filed a motion for new trial as well as a motion for post-verdict judgment of acquittal. At the sentencing proceeding, defense counsel presented argument on the two motions, and the motions were denied by the trial judge. The judge then immediately proceeded with imposition of Defendant's sentence.

After the judge denied the two motions, he did not ask the parties whether they were ready to proceed with the sentencing, and the trial court did not ask Defendant if he wanted to waive the twenty-four hour delay required by Article 873. Accordingly, there was no express waiver of the twenty-four hour delay. We must now determine whether there was an implied waiver of the delay.

In *State v. Westmoreland*, 10-1408, pp. 3-5 (La.App. 3 Cir. 5/4/11), 63 So.3d 373, 377-78, *writ denied*, 11-1660 (La. 1/20/12), 78 So.3d 140 (footnote omitted), this court held:

> However, there is no violation of Article 873 where there is an express or implied waiver of the delay. *State v. C.S.D.*, 08-877 (La.App. 3 Cir. 2/4/09), 4 So.3d 204. A defendant can expressly waive the delay when he announces his readiness for sentencing or responds affirmatively when the trial court asks if he wants to be sentenced on that date. *State v. Schmidt*, 99-1412 (La.App. 3 Cir. 7/26/00), 771 So.2d 131, *writ denied*, 00-2950 (La.9/28/01), 798 So.2d 105, *cert. denied*, 535 U.S. 905, 122 S.Ct. 1205, 152 L.Ed.2d 143 (2002). A panel of this court has previously found that a

defendant may impliedly waive the delay where there is evidence in the record that the defendant was aware of the sentencing date, did not object to the delay, and participated in the sentencing hearing and where the trial court thoroughly set forth its reasons for sentencing. *Id.*

In this case, sentencing was rescheduled twice. The trial court held a hearing on the defendant's motion for post-verdict judgment of acquittal one week before the sentencing hearing. When the trial court took the motion for post-verdict judgment of acquittal under advisement, it informed the defendant and trial counsel "[I]'m ordering that this matter be set again for Friday week at nine o'clock for the court to rule on these motions and, if necessary, to impose sentence."

At the sentencing hearing, after denying the defendant's motion for post-verdict judgment of acquittal, the trial court stated that it had reviewed the pre-sentence investigation and a statement submitted by the Defendant attached thereto and inquired whether the defendant wished to offer anything else at that time. The defendant's attorney stated that he had read the pre-sentence investigation, noted that the defendant was a first offender, requested that the defendant be sentenced under the provisions of La.Code Crim.P. art. 893, and requested that the defendant be allowed to retain a gun for hunting purposes.

We note that the defendant did not request a continuance of sentencing, nor did he object to being sentenced at that time. The record does not indicate that the defendant was unaware that he was to be sentenced on that date. In late May 2010, the defendant requested that the hearings for post-judgment verdict of acquittal, sentencing, and restitution be scheduled for the same date. At the hearing on the motion for post-verdict judgment of acquittal, the trial court took the matter under advisement and rescheduled the hearing date. The trial court stated that, if it denied the motion, it intended to sentence the defendant that same date. The trial court gave lengthy reasons for imposing sentence. Additionally, the defendant does not allege that he suffered any prejudice as a result of the failure to delay the imposition of sentence. Therefore, we find that the defendant impliedly waived the twenty-four hour delay.

In *State v. Bergeron*, 14-608, pp. 3-4 (La.App. 3 Cir. 11/5/14), 150 So.3d

523, 527, this court found an implied waiver of the Article 873 delay under the

following circumstances:

[A]t the conclusion of the trial, sentencing was set for August 1, 2013. On July 22, 2013, the defense filed a motion for a complete

13

transcript of the proceedings and a motion for continuance. Sentencing was continued to October 3, 2013. On September 25, 2013, the court continued the matter to November 7, 2013, due to the requested transcript being incomplete. Minutes dated October 4, 2013, indicate that defense counsel was present in court when sentencing was refixed for December 2, 2013. The post-trial motions filed by the defense on November 25, 2013, were set for hearing on December 2, 1013. Thus, the record indicates the defense was aware the sentencing would be taken up on December 2, 2013.

The defense voiced no objection when sentencing was taken up immediately after the denial of the post-trial motions. After the victim addressed the court, the defense presented witnesses and evidence in support of the imposition of a lenient sentence. The trial court's comments prior to imposing sentence clearly indicated that it had carefully considered what would be appropriate sentences to impose, and the sentences were supported with ample reasons. We note that in his brief to this court, defense counsel does not assign as error the trial court's failure to delay sentencing and he does not allege any prejudice as a result of the error. This court finds the facts in this case support an implied waiver of the delay required by La.Code Crim.P. art. 873, so we find no errors patent.

More recently, in *State v. Roy*, 15-516, pp. 5-6 (La.App. 3 Cir. 11/4/15), 177 So.3d 1112, 1115, this court found an implied waiver where the defendant challenged his sentence on appeal but did not allege prejudice as a result of the failure to observe the Article 873 delay under the following circumstances:

> [W]e find that Defendant did not request a continuance of sentencing, nor did he object to being sentenced at that time. The record does indicate that Defendant was aware that he was to be sentenced on that date, and he testified on the issue of the motion for new trial and the issue of sentencing. His attorney expressly agreed to have both issues heard together "at the same time". Defense counsel presented argument at the sentencing hearing on both issues and the trial court set forth its reasons for denying the motion for new trial and its reasons for sentencing.

In the present case, Defendant did not request a continuance of sentencing, nor did he object to being sentenced at that time. As discussed above, the sentencing date was set at the close of trial in the presence of Defendant and his attorney; thus, Defendant was aware of the sentencing date and did not object to

14

proceeding with sentencing. Defense counsel presented a brief argument at the sentencing hearing mainly to clarify the argument for leniency made by his client. The trial court briefly set forth its reasons for sentencing. Finally, in Defendant's brief to this court, Defendant challenges his sentences but does not allege any prejudice as a result of the possible Article 873 violation. Thus, we find that the facts in this case support an implied waiver of the delay required by La.Code Crim.P. art. 873.

## ASSIGNMENT OF ERROR NUMBER ONE

Defendant challenges the sufficiency of the evidence on several grounds.

In *State v. Lapoint*, 16-187, pp. 2-4 (La.App. 3 Cir. 9/28/16) 202 So.3d 593, 596-97, this court set forth the standard of review for a sufficiency of the evidence claim writing in pertinent part:

> The standard for appellate review of the sufficiency of the evidence is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560, 573 (1979); *State v. Ortiz*, 96-1609 (La. 10/21/97), 701 So.2d 922, 930, *cert. denied*, 524 U.S. 943, 118 S.Ct. 2352, 141 L.Ed.2d 722 (1998); *State v. Barnes*, 98-932 (La.App. 5th Cir. 2/10/99), 729 So.2d 44, 46, *writ denied*, 99-1018 (La. 9/17/99), 747 So.2d 1099.
>
> Under *Jackson*, a review of a criminal conviction record for sufficiency of evidence does not require a court to ask whether it believes that the evidence at the trial established guilt beyond a reasonable doubt. *Barnes*, 729 So.2d at 46. A reviewing court is required to consider the whole record and determine whether a rational trier of fact would have found guilt beyond a reasonable doubt. *Id*.

*State v. Harrell*, 01-841, p. 6 (La.App. 5 Cir. 2/26/02), 811 So.2d 1015, 1018.

Thus, other than ensuring the sufficiency evaluation standard of Jackson, "the appellate court should not second-guess the credibility determination of the trier of fact," but rather, it should defer to the rational credibility and evidentiary determinations of the jury. *State v. Ryan*, 07-504, p. 2 (La.App. 3 Cir. 11/7/07), 969 So.2d 1268, 1270 (quoting *State v. Lambert*, 97-64, pp. 4-5 (La.App. 3 Cir. 9/30/98), 720 So.2d 724, 726-27). An appellate court may, however, impinge on the fact finder's discretion and its role in determining the credibility of witnesses "only to the extent necessary to guarantee the fundamental protection of due process of law." *State v. Mussall*, 523 So.2d 1305, 1310 (La.1988).

> A victim or witness's testimony alone is usually sufficient to support the verdict, as appellate courts will not second-guess the credibility determinations of the fact finder beyond the constitutional standard of sufficiency. *State v. Davis*, 02-1043, p. 3 (La. 6/27/03), 848 So.2d 557, 559. In the absence of internal contradiction or irreconcilable conflict with physical evidence, one witness's testimony, if believed by the fact finder, is sufficient support for a requisite factual conclusion. *State v. Robinson*, 02-1869, p. 16 (La. 4/14/04), 874 So.2d 66, 79.

*State v. Dorsey*, 10-216, pp. 43-44 (La. 9/7/11), 74 So.3d 603, 634, *cert. denied*, ___ U.S. ___, 132 S.Ct. 1859, 182 L.Ed.2d 658 (2012).

Defendant was convicted of attempted indecent behavior with a juvenile. In 2013, Louisiana Revised Statutes 14:81 provided:

> A. Indecent behavior with juveniles is the commission of any of the following acts with the intention of arousing or gratifying the sexual desires of either person:

> (1) Any lewd or lascivious act upon the person or in the presence of any child under the age of seventeen, where there is an age difference of greater than two years between the two persons. Lack of knowledge of the child's age shall not be a defense[.]

Louisiana Revised Statutes 14:27 provides:

> A. Any person who, having a specific intent to commit a crime, does or omits an act for the purpose of and tending directly toward the accomplishing of his object is guilty of an attempt to commit the offense intended; and it shall be immaterial whether, under the circumstances, he would have actually accomplished his purpose.

16

In *State v. Jones,* 09-937, p. 2 (La.App. 3 Cir. 3/10/10), 32 So.3d 1084, 1086, *reversed on other grounds*, 10-762 (La. 9/7/11), 74 So.3d 197, the court explained in pertinent part:

> [I]n order to have convicted Defendant of the lesser and included offense of attempted indecent behavior with a juvenile, the jury would have had to find that the Defendant specifically intended to commit a lewd and lascivious act upon the victim, or in the victim's presence, and did an act in furtherance thereof. *State v. Gaspard*, 02-1040 (La.App. 3 Cir. 3/5/03), 841 So.2d 1021.

Defendant argues that the jury made an irrational decision to convict him. He contends that C.R.'s story was "so incredible no rational trier of fact" could have found him guilty. In support of this assertion, Defendant points out that Ms. O'Neill, who was in the cab of the truck with Defendant and C.R. when the incident allegedly occurred, did not see his penis, did not see him masturbating, and did not hear him ask C.R. if she was scared. Also, Defendant questions why C.R. would stay at his home another night if the incident had occurred. In the State's response, it argues that Ms. O'Neill's testimony that she consumed an eighteen pack of beer prior to the drive calls into question her "veracity and reliability."

The jury chose to reject Ms. O'Neill's testimony and accept the testimony of C.R. Additionally, C.R.'s statement to police, her interview at Project Celebration, and her testimony at trial were consistent. Furthermore, Defendant's daughter testified regarding similar behavior by Defendant with her. Thus, viewing the evidence in the light most favorable to the State, we find that Defendant failed to prove that the jury's verdict of attempted indecent behavior with a juvenile was irrational.

Next, Defendant argues that the State failed to prove he had specific intent to commit the offense because he was drunk.[3] Defendant writes, "As Timothy was clearly intoxicated, he could not have formed the specific intent necessary to convict him of the crime charged. La.R.S. 14:15. His conviction should be reversed and his sentence vacated."

Louisiana Revised Statutes 14:15 provides, in pertinent part:

> The fact of an intoxicated or drugged condition of the offender at the time of the commission of the crime is immaterial, except as follows:
>
> . . .
>
> (2) Where the circumstances indicate that an intoxicated or drugged condition has precluded the presence of a specific criminal intent or of special knowledge required in a particular crime, this fact constitutes a defense to a prosecution for that crime.

In *State v. Guess*, 47,370, p. 8 (La.App. 2 Cir. 8/8/12), 104 So.3d 41, 47, *writ denied*, 12-1987 (La. 3/8/13), 109 So.3d 357, the court held in pertinent part:

> Intoxication is a defense when the circumstances indicate that the intoxicated or drugged condition precluded the presence of a specific criminal intent or of special knowledge required in a particular crime. La. R.S. 14:15(2). Intoxication is an affirmative defense that must be proved by the defendant by a preponderance of the evidence. *State v. Hall*, 43,920 (La.App.2d Cir.2/25/09), 4 So.3d 295, *writ denied*, 2009-0691 (La.12/11/09), 23 So.3d 911; *State v. Tolbird*, 28,986 (La.App.2d Cir.12/11/96), 685 So.2d 415. If the defendant proves he was intoxicated at the time of the offense, the burden is on the state to negate that defense by proof beyond a reasonable doubt. *Hall*, *supra*. The jury is the ultimate factfinder of whether a defendant proved his intoxicated condition and whether the state negated the defense. *State v. Legrand*, 2002-1462 (La.12/3/03), 864 So.2d 89, *cert. denied*, 544 U.S. 947, 125 S.Ct. 1692, 161 L.Ed.2d 523 (2005).

At the conclusion of Defendant's trial, the trial court instructed the jury as follows:

---

[3] The State did not address this claim in its brief to this court.

18

The fact that a defendant was in an intoxicated condition at the time of the commission of the crime is usually not a defense, however, where the circumstances indicate that the defendant voluntarily became intoxicated and that his intoxicated condition precluded the presence of a specific intent required in a particular crime, this fact constitutes a defense to the prosecution for that crime.

Defendant did not present any expert testimony or testify himself regarding his intoxication. Although his daughter and C.R. testified Defendant was drinking that night and C.R. thought Defendant may not recall what happened because he was drunk, this court finds their opinion of a fourteen year old girl is insufficient to prove, by a preponderance of the evidence, that Defendant's intoxication negated his specific intent. Additionally, despite his alleged intoxication at the time of the offenses, Defendant recalled bringing Ms. O'Neill home but did not recall C.R. riding with him. Furthermore, after listening to the entirety of the testimony, the jury determined the issue of specific intent against Defendant. Thus, we find, viewing all of the evidence in the light most favorable to the prosecution, the State proved beyond a reasonable doubt that Defendant had the requisite specific intent to find Defendant guilty as charged.

Accordingly, we find this assignment of error lacks merit and is denied.

## ASSIGNMENT OF ERROR NUMBER TWO

Defendant also asserts that he received an excessive sentence. In his brief to this court and at the hearing on the motion to reconsider sentence, Defendant pointed out he received less than six months of the maximum sentence he could have received. Additionally, in his brief to this court and at the hearing on the motion to reconsider sentence, Defendant contends that, although he was a third felony offender, it had been twenty-seven years since he had been in prison, and he was not the "most egregious of offenders." Furthermore, Defendant argues that the

trial court failed to consider his age, his steady employment, and his children he supported.

In the State's response, it argues that the trial court considered the Pre-sentence Investigation Report (PSI), the sentencing "guidelines," and the aggravating and mitigating circumstances. The State contends the trial court was not required to list every aggravating and mitigating circumstance as long as the record reflected adequate consideration of the criteria set forth in La.Code Crim.P. art. 894.1. The State writes that, "considering the nature of the crime[,] the sentence was not excessive under Louisiana law."

In denying the motion to reconsider sentence, the trial court noted it was a "compromise verdict, and the sentence is appropriate."

In *State v. Soriano*, 15-1006 (La.App. 3 Cir. 6/1/16), 192 So.3d 899, the court set forth the applicable law for reviewing an excessive sentence claim. This court wrote in pertinent part:

> In *State v. Barling*, 00-1241, 00-1591, p. 12 (La.App. 3 Cir. 1/31/01), 779 So.2d 1035, 1042-43, *writ denied*, 01-838 (La.2/1/02), 808 So.2d 331, a panel of this court discussed the review of excessive sentence claims, stating:
>
> > La. Const. art. I, § 20 guarantees that, "[n]o law shall subject any person to cruel or unusual punishment." To constitute an excessive sentence, the reviewing court must find the penalty so grossly disproportionate to the severity of the crime as to shock our sense of justice or that the sentence makes no measurable contribution to acceptable penal goals and is, therefore, nothing more than a needless imposition of pain and suffering. *State v. Campbell*, 404 So.2d 1205 (La.1981). The trial court has wide discretion in the imposition of sentence within the statutory limits and such sentence shall not be set aside as excessive absent a manifest abuse of discretion. *State v. Etienne*, 99-192 (La.App. 3 Cir. 10/13/99); 746 So.2d 124, *writ denied*, 00-0165 (La.6/30/00); 765 So.2d 1067. The relevant question is whether the trial court abused its broad sentencing discretion, not whether another

sentence might have been more appropriate. *State v. Cook*, 95-2784 (La.5/31/96); 674 So.2d 957, *cert. denied*, 519 U.S. 1043, 117 S.Ct. 615, 136 L.Ed.2d 539 (1996).

In *State v. Smith*, 02-719, p. 4 (La.App. 3 Cir. 2/12/03), 846 So.2d 786, 789, *writ denied*, 03-562 (La.5/30/03), 845 So.2d 1061, a panel of this court elaborated on that analysis, stating:

> In deciding whether a sentence is shocking or makes no meaningful contribution to acceptable penal goals, an appellate court may consider several factors including the nature of the offense, the circumstances of the offender, the legislative purpose behind the punishment and a comparison of the sentences imposed for similar crimes. *State v. Smith*, 99-0606 (La.7/6/00); 766 So.2d 501. While a comparison of sentences imposed for similar crimes may provide some insight, "it is well settled that sentences must be individualized to the particular offender and to the particular offense committed." *State v. Batiste*, 594 So.2d 1 (La.App. 1 Cir.1991). Additionally, it is within the purview of the trial court to particularize the sentence because the trial judge "remains in the best position to assess the aggravating and mitigating circumstances presented by each case." *State v. Cook*, 95-2784 (La.5/31/96); 674 So.2d 957, 958.

*Id.* at 901-02.

In this case, although Defendant characterizes his actions as "not egregious," this court finds otherwise. He took advantage of a fourteen year old girl who was staying with his daughter by exposing himself to her and masturbating in front of her while rubbing on her.

At the sentencing hearing, the trial court considered the circumstances of Defendant and stated, in pertinent part:

> I show that you are a third felony offender. Of course, I had ordered a pre-sentence investigation to be conducted. A report's been returned to me. I've made it available to your attorney, Mr. Woolbert, to review. Again, I notice that you are a third felony offender. I noted the official statement of the offense, your criminal history, your social history. I noted the aggravating, mitigating circumstances regarding sentencing guidelines.

21

The pre-sentence investigation reviewed by the trial court indicated that the fifty-one year old Defendant had prior convictions, and he was considered a third felony offender. The report noted that, since Defendant was a third felony offender, he was not eligible for probation on the instant offense.

In *State v. Taylor,* 95-179 (La.App. 3 Cir. 10/4/95), 663 So.2d 336, the defendant, who was convicted of attempted indecent behavior with a juvenile, was sentenced to three years at hard labor. This court denied his excessive sentence claim and noted that the defendant had a prior conviction of indecent behavior with a juvenile.

In *State v. F.A.R., Jr.*, 568 So.2d 238 (La.App. 3 Cir. 1990), the defendant was sentenced to three and one-half years at hard labor on each of the five counts of attempted indecent behavior with a juvenile to be served consecutively. He challenged his sentence as excessive, and this court denied the claim based upon the trial court's reasons. The trial court noted that the defendant had no prior criminal convictions but found "the defendant's moral character was repugnant." *Id.* at 243. At sentencing, the trial court noted the defendant allowed the children in his care to watch pornographic movies, the offenses were committed over a period of years, and the victim suffered great psychological damage as a result of the defendant's actions. Additionally, the trial court was concerned that the victim, who wanted to return to the household of her mother and the defendant, would be at risk of the defendant committing the same or similar acts if not imprisoned.

In this case, three and one-half years was the maximum sentence Defendant could receive, and the trial court imposed three years at hard labor. La.R.S. 14:81 and 14:27 (2013). Considering the factors set forth in *Smith*, 846 So.2d 786, we find that the trial court did not abuse its considerable discretion.

22

Consequently, there is no merit to Defendant's claim that his sentence is excessive.

**DECREE**

Defendant's conviction and sentence are affirmed.

**AFFIRMED.**